**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 96-40155

(Summary Calendar)
_____

UNITED STATES OF AMERICA,

                              Plaintiff - Appellee,

versus

AMADOR GARZA,

                              Defendant - Appellant.

Appeal from the United States District Court
For the Southern District of Texas
(L:95-CR-235)

January 7, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

     Amador Garza appeals his conviction for possession with intent
to distribute marijuana.  At issue is the district court's denial
of a motion to suppress evidence, namely marijuana discovered in
Garza's vehicle during a stop by a United States Border Patrol

---

     [*]     Pursuant to Local Rule 47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

agent. We find that the border patrol had a reasonable suspicion to conduct the investigatory stop and that the district court did not err by refusing to suppress the evidence. We affirm.

Garza showed up in the wrong place at the wrong time in a white Chevrolet 4x4 Suburban stuffed to the doors with marijuana. Border Patrol Agent Luis Ramon Caballero, who discovered the contraband, had been spending the end of his shift looking for illegal aliens in Hebbronville following an anonymous tip. During his search, Caballero heard reports on his patrol radio of suspicious activity in the area involving known drug smugglers. As Caballero stopped and prepared to turn north onto Highway 16 in Hebbronville, he noticed Garza's Suburban, spattered with dead butterflies and splashed with chalky caliche mud. Although the vehicle's rear windows were tinted, the front windows were not, and Garza made eye contact with Caballero, who was riding in a marked Border Patrol truck. Caballero testified that Garza appeared "really surprised" to see him, that Garza stared at the officer for a long time, and that when he saw Caballero looking back, Garza's eyes widened noticeably. Garza put both hands on the wheel, apparently attempting to appear normal, and stared straight ahead as he drove off.

Caballero did not recognize the vehicle or Garza as local to Hebbronville, and a quick check revealed that the Suburban was not registered. The agent began to follow Garza north on Highway 16. The officer called checkpoints on adjacent highways, and agents

-2-

reported that they had not seen Garza pass. Caballero later testified that this, along with the caliche mud, indicated to him that the truck had been traveling through ranches on dirt roads, a common practice among smugglers to avoid detection. As Caballero followed Garza north on Highway 16, he saw Garza watching him through the side mirror. Garza crossed the yellow center line twice, and slowed down to allow Caballero to pass. Caballero pulled Garza over, and as he approached the vehicle, he smelled marijuana. Peering in the vehicle, Caballero could see marijuana in both the front seat and the back. Officials arrested Garza and recovered 862 pounds of marijuana from the vehicle.

Although the grand jury indicted Garza for four drug offenses, the government dropped all charges except possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Garza filed a motion to suppress the marijuana evidence, and the district court held an evidentiary hearing. At the hearing, Caballero testified about the circumstances that gave rise to his suspicion. From the bench, the court denied Garza's motion to suppress, holding that the Caballero had reasonable suspicion for the stop and search and that the marijuana was admissible. Garza entered a conditional plea in an effort to preserve his challenge to the denial of the motion to suppress. The district court sentenced Garza to a sixty-month prison term and ordered him to serve a five-year term of supervised release and pay a $50 mandatory assessment.

On appeal, Garza does not challenge the sufficiency of the

-3-

evidence to convict him; he only challenges the admissibility of the marijuana. Garza contends that under the circumstances Caballero and the Border Patrol did not have a reasonable suspicion that he was smuggling, and that the stop and search therefore violated the Fourth Amendment. Garza further urges that the marijuana is "fruit of the poisonous tree," inadmissible evidence obtained from an unconstitutional search.

We employ a two-tiered standard in reviewing the denial of a motion to suppress, reviewing the district court's findings of fact for clear error and its ultimate conclusions about constitutionality de novo. *United States v. Chavez-Villarreal*, 3 F.3d 124, 126 (5th Cir. 1993). We review the district court's determination of reasonable suspicion de novo. *Ornelas v. United States*, ___ U.S. ___, ___, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996). Reasonable suspicion is considerably easier for the government to establish than probable cause. *United States v. Wangler*, 987 F.2d 228, 230 (5th Cir. 1993). However, we will uphold the district court's decision to deny the motion to suppress if there is any reasonable view of the evidence to support it. *United States v. Tellez*, 11 F.3d 530, 532 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1630, 128 L. Ed. 2d 354 (1994).

A Border Patrol agent conducting a roving patrol in a border area may make a temporary, investigative stop of a vehicle if specific, articulable facts and the rational inferences drawn from

-4-

those facts reasonably warrant suspicion that the vehicle is engaged in illegal activities. *United States v. Cortez*, 449 U.S. 411, 421-22, 101 S. Ct. 690, 697, 66 L. Ed. 2d 621 (1981); *United States v. Casteneda*, 951 F.2d 44, 46-47 (5th Cir. 1992). In assessing the evidence, we examine the totality of the circumstances as understood by those versed in the field of law enforcement. *Cortez*, 449 U.S. at 418, 101 S. Ct. at 695; *United States v. Diaz*, 977 F.2d 163, 164-65 (5th Cir. 1992). Among the factors we consider are the characteristics of the area, its proximity to the border, usual traffic patterns, the agent's previous experience with criminal activity, characteristics of the vehicle, erratic driving and the behavior of the driver. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85, 95 S. Ct. 2574, 2582, 45 L. Ed. 2d (1975). In considering the totality of the circumstances, the absence of any particular factor will not dictate whether suspicion was reasonable. *United States v. Cardona*, 955 F.2d 976, 980 (5th Cir.), *cert. denied*, 506 U.S. 942, 113 S. Ct. 381, 121 L. Ed. 2d 291 (1992).

Under the totality of the circumstances, we find that Agent Caballero had reasonable suspicion to conduct an investigative stop of Garza's vehicle. Many general factors contributed to the agent's suspicion. Caballero had been with the Border Patrol in Hebbronville for three years and knew that drug traffickers frequented the area. Hebbronville is close to the Mexican border,

-5-

about 60 miles from Laredo and 160 miles from Brownsville. Furthermore, about two weeks before Caballero stopped Garza, authorities confiscated about one thousand pounds of marijuana from a similar 4x4 Suburban abandoned near Hebbronville.

Caballero testified during the evidentiary hearing that a confluence of suspicious events the afternoon of the stop also heightened his suspicion. As the agent was ending his shift, he overheard several radio communications about smuggling activity. Less than an hour before Caballero stopped Garza, Border Patrol agents stopped Jose Bazan, a known narcotics smuggler who often drives a "lead vehicle or a decoy vehicle," near Hebbronville. Agents also stopped a white pickup truck, which matched a description of a typical "load vehicle," traveling with Bazan. The truck had been recently purchased and exhibited no markings. The two young drivers told Border Patrol agents a story that agents believed to be fabricated. Minutes later, officials found Yolanda Cruz, another known drug smuggler, near the gate to the Mastena Ranch with the keys to that gate. Cruz also gave a less-than-credible account of what she was doing at the ranch, suggesting that she was picking herbs for medicine by the gate. Cruz had a reputation as a "shepherd" for traffickers, and the agents suspected that she had been there to open the gate for smugglers trying to travel on ranch roads to avoid detection. Caballero knew that both Bazan and Cruz were from Rio Grande City; he suspected that they were working together and that something was going down.

-6-

In this context, Garza crossed the path of Agent Caballero. The butterflies evident on the front of his Suburban indicated that Garza had driven some distance recently, and the caliche mud suggested that Garza had been traveling on ranch roads at least part of the way. Caballero knew most of the residents of Hebbronville and did not recognize Garza. Garza's surprised look, and the fact that he was driving an unregistered 4x4 Suburban nearly identical to one found packed with marijuana two weeks before, compounded with the fact that agents at checkpoints on other highways had not seen Garza, gave Caballero reasonable suspicion that Garza was engaged in criminal activity.

For the reasons articulated by the district court and discussed herein, we find that under the totality of the circumstances Caballero had reasonable suspicion to conduct an investigatory stop of Garza's vehicle. The agent's stop and search simply did not violate the Fourth Amendment, and the district court did not err by admitting the evidence produced by the stop. We AFFIRM.